Seth W. Wiener (California State Bar No. 203747)
LAW OFFICES OF SETH W. WIENER
609 Karina Court
San Ramon, CA 94582
Telephone: (925) 487-5607
Email: seth@sethwienerlaw.com

Attorney for Plaintiff
CLARENCE A. JACKSON

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLARENCE A. JACKSON, | Case No.: 3:21-cv-5265 |
| Plaintiff, | **COMPLAINT** |
| v. | |
| GENENTECH, INC.; and DOES 1 through 10, inclusive, | |
| Defendants. | |

## OVERVIEW OF ACTION

1.  This employment discrimination lawsuit is brought by Plaintiff Mr. Clarence A. Jackson ("Plaintiff" or "Mr. Jackson") against Defendant Genentech, Inc. ("Genentech") based upon Genentech's failure to promote him to a higher grade level because of his race and sex, and subsequent termination of his employment based on his age, disabilities, and in retaliation for Mr. Jackson having filed a Charge of Discrimination with the Equal Employment Opportunity Commission.

## PARTIES

2.  Plaintiff Mr. Clarence A. Jackson is an individual resident in this District.  Mr. Jackson is a male, over the age of forty, and is African American.  At the time of his termination, Mr. Jackson suffered from Adjustment Disorder with mixed anxiety and depressed mood.

3.  Defendant Genentech, Inc. ("Genentech") is a corporation incorporated under the laws of the state of Delaware, and has its principal place of business in this District.

4.  The true names and capacities, whether individual, corporate, or otherwise of the Defendants sued herein as Does 1 through 10, inclusive (the "Doe Defendants") are unknown to

Plaintiff at this time, and for that reason Plaintiff sues the Doe Defendants by fictitious names. Plaintiff will seek leave to amend this Complaint to allege the true names and capacities of said Doe Defendants when they have been ascertained.

5.      At all times mentioned, and unless otherwise stated, each of the Defendants was the agent and/or employee of each and every co-Defendant, and in performing the things, acts, and/or omissions, hereinafter more fully alleged, was acting within the scope and authority of said agency and/or employment.  Each of the Defendants herein authorized, ratified, knew about or should have known about, and/or condoned the actions and omission of each and every other Defendant.

## JURISDICTION AND VENUE

6.      Plaintiff brings this action under the Americans with Disabilities Act ("ADA") (42 U.S.C. §§ 12101, *et seq.* as amended by the ADA Amendments Act of 2008), the Age Discrimination in Employment Act (29 U.S.C. §§ 621, *et seq.*), and Title VII (42 U.S.C. § 2000e-2).

7.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, which gives the district courts original jurisdiction over civil actions arising under the constitution, laws, or treaties of the United States, and 28 U.S.C. § 1367 which gives the district courts jurisdiction over supplemental state law claims.

8.      Venue is proper in this Court because the events that gave rise to this Complaint occurred in this District and the parties reside here.

## FACTUAL ALLEGATIONS

9.      On or about December 19, 2001, Genentech hired Jackson as an intern on the Quality Control Reagent Preparation Team, at Genentech's South San Francisco campus.

10.      In July 2004, under the supervision of QC Manager 1, Jackson received "Exceeds Expectations" reviews and Genentech promoted Mr. Jackson to Quality Control Analyst.

11.      Jackson continued to receive either "Meets or Exceeds Expectations" in his annual reviews under QC Manager 1. In June 2007, Genentech promoted Mr. Jackson to Quality Control Analyst II.  As a Quality Control Analyst II, Mr. Jackson was responsible for: receiving, transferring, storing, and maintaining of samples from various manufacturing groups and sites; archiving reserve; retaining samples, organizing sample storage; and maintaining inventory of samples.  Mr. Jackson also

performed higher-level job duties, including serving as the team leader, new hire and novel temperature monitoring technology trainer, and was a subject matter expert for Genentech's Controlled Temperature Environment systems, in addition to collaborating with other departments in developing a sophisticated discrepancy management for reducing sample handling errors.

12.     Mr. Jackson was the only African American member of his department at Genentech.

13.     Mr. Jackson was a member of multiple positive, collaborative and encouraging employee led groups at Genentech, including Green Genes, Genentech's environmentally conscious organization that seeks to reduce environmental impact. As a member of Green Genes, Mr. Jackson received an award of $250 for his ideas on ways to recycle plastic at work and reduce Genentech's addition to landfill. Mr. Jackson was also a member of Genentech's Diversity Network Association's African Americans in Biotechnology club which encouraged underrepresented African American people to join the biotechnology industry. Mr. Jackson participated in the Genentech Gives Back events wherein he volunteered to support the education in Science Technology Engineering and Math for local school children in South San Francisco. Mr. Jackson was also a positive and encouraging employee, often volunteering to provide birthday and other life event recognition for his fellow QC Sample Management team members.

14.     After June 2007, Genentech failed to promote Mr. Jackson while at the same time Genentech promoted less-qualified employees than Mr. Jackson. Eventually every other member of the Quality Control Sample Management staff at analyst level was promoted by QC Supervisor 2 above Mr. Jackson regardless of seniority or job performance.

15.     Plaintiff alleges on information and belief that Genentech failed to promote him because of Plaintiff's race and sex.

16.     Genentech also treated Mr. Jackson in a demeaning manner.  For example, in 2010, after Mr. Jackson successfully handling the logistical management of moving Genentech's Controlled Temperature Environment equipment and samples from one building to another, QC Supervisor 2 on the day of execution replaced Mr. Jackson with a temporary employee and gave him the credit for the project, handed Mr. Jackson a broom in front of fellow co-workers and told Jackson to sweep the floor. Mr. Jackson was also subjected to other unfair criticisms by his supervisors. QC Supervisor 2 falsified

Mr. Jackson's annual reviews by leaving out his accomplishments, and falsely accusing Mr. Jackson of committing documentation errors and mishandling samples without proof.  When Mr. Jackson went to QC Management to discuss the discrepancies in his annual reviews, he was told to work it out with QC Supervisor 2. Genentech's review process required employees to only work through their issues with direct supervisors leaving Mr. Jackson without recourse. In addition, Genentech's review process requires that one or more individual(s) fall below level of promotion either in pay or job level, which resulted in Mr. Jackson being singled out by QC Supervisor 2 as the "odd man out" on an annual basis. When a supervisor denotes one employee to this position it allows other supervisors of the same department to promote individuals above the selected employee even when they may have been poorer performing.  This methodology allowed the discrimination of Mr. Jackson to continue with passive approval of other QC Supervisors and leaving Mr. Jackson without appeal while at the same time allowing colleagues to be promoted above him.

17.     In 2016 Mr. Jackson's direct supervisor was replaced with QC Supervisor 3 who gave Mr. Jackson an "Exceeds Expectation" on his mid-year review. However, at the conclusion of the review cycle QC Supervisor 2 was re-instated as direct supervisor and Mr. Jackson was given "Meets Expectation" despite the more positive mid-year review.

18.     In mid-2017, Mr. Jackson received a "Fully Met Expectations" rating on his 2017 performance review.

19.     On or about November 11, 2017, Jackson filed a Charge of Discrimination, No. 550-2018-00017, with the Equal Employment Opportunity Commission in which Mr. Jackson claimed that Genentech discriminated against him because of his race and sex.

20.     On or about January 15, 2018, Genentech granted Mr. Jackson's request for a medical leave of absence. Mr. Jackson worked with a worker's compensation doctor that diagnosed him with stress and depression due to the harassment at work from QC Supervisor 2. This doctor made written statements that the treatment of QC Supervisor 2 was demoralizing and demeaning to Mr. Jackson.

21.     On June 22, 2018, Mr. Jackson returned to work at Genentech on a modified schedule. Upon return to work, Mr. Jackson submitted a request for accommodation for his disability to Genentech, requesting a third1party participant in any one-on-one meetings with QC Supervisor 2.

4

COMPLAINT

This request for a reasonable accommodation was denied entirely by Genentech without engaging in any good faith interactive process with Mr. Jackson.

22.     On or about July 26, 2018, Genentech informed Mr. Jackson that he was being laid off. Mr. Jackson's less senior co-workers were not laid off.

23.     The termination of Mr. Jackson's employment at Genentech was effective September 28, 2018.  At the time of termination. Mr. Jackson's earnings were less than that of a Summer Intern analyst and far less than posted salary ranges for QC Analyst II employees.  Plaintiff alleges on information and belief that Genentech terminated Plaintiff's employment because of Plaintiff's age and disabled status, and in retaliation for Mr. Jackson having filed a Charge of Discrimination, No. 550-2018-00017 with the Equal Employment Opportunity Commission.

24.     On April 21, 2021, the Equal Employment Opportunity Commission issued a Dismissal and Notice of Rights to Plaintiff in EEOC Charge Nos. 550-2018-00017 and 550-2018-01836. Plaintiff filed this lawsuit within 90 days of Plaintiff's receipt of the Dismissals and Notice of Rights.

## FIRST CAUSE OF ACTION

### (Disability Discrimination – ADA)

25.     Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as though fully set forth herein.

26.     Plaintiff had, or was regarded as having, past, current, or future mental disabilities that substantially limited at least one major life activity and had a record of having such a disabilities.

27.     Genentech knew or should have known that Plaintiff was, or was perceived to be, an individual with past, current, or future disabilities that substantially limited at least one major life activity.

28.     At all times material to this Complaint, Plaintiff was a qualified individual who was capable of performing the essential functions of his position at Genentech with or without reasonable accommodations of his disabilities.

29.     At all times herein mentioned, the ADA was in full force and effect and was binding on Genentech. The ADA required Genentech to refrain from discriminating against Plaintiff on the basis of, among other things, disability. Further, the ADA required Genentech to take all reasonable steps

COMPLAINT

necessary to prevent such discrimination from occurring and to provide reasonable accommodations for Mr. Jackson's disabilities.

30.     As alleged above, Genentech violated the ADA by failing to take all reasonable steps necessary to prevent disability discrimination against Plaintiff from occurring and failing to provide reasonable accommodations for Mr. Jackson's disabilities.. To the contrary, Genentech knowingly and intentionally took steps to discriminate against Plaintiff as described above.

31.     Plaintiff is informed and believes and thereon alleges that his disabilities were a significant factor in Genentech's decision to terminate his employment. Such discrimination is in violation of the ADA and has resulted in damage and injury to Plaintiff as alleged herein.

32.     As a proximate result of Genentech's willful, knowing, and intentional discrimination against Plaintiff, he has sustained economic losses, humiliation, emotional distress, and mental and physical pain and anguish in an amount subject to proof.

33.     Due to Genentech's discrimination, Plaintiff has incurred and continues to incur legal expenses and attorney's fees, in a sum according to proof.

## SECOND CAUSE OF ACTION

### (Wrongful Termination in Violation of Public Policy)

34.     Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as though fully set forth herein.

35.     Plaintiff was employed by Genentech.

36.     On or about June 26, 2018, Genentech wrongfully terminated Plaintiff's employment due to Plaintiff's age, disabilities, and in retaliation for Mr. Jackson having filed a Charge of Discrimination with the Equal Employment Opportunity Commission.

37.     Genentech's termination of Plaintiff's employment was in violation of the public policy of this state "to protect and safeguard the right and opportunity of all persons to seek, obtain, and hold employment without discrimination or abridgment on account of … mental disability …" and "the right to seek and hold employment free of prejudice …"

38.     Pursuant to this cause of action, Plaintiff seeks reinstatement of his employment with Genentech, back pay and benefits, and a judicial declaration that Genentech permit him to hold his

COMPLAINT

6

employment free of prejudice.

## THIRD CAUSE OF ACTION

**(Age Discrimination – Age Discrimination in Employment Act, 29 U.S.C. §§ 621, *et seq.*)**

39.    Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as though fully set forth herein.

40.    29 U.S.C. § 623(a)(1) states "[i]t shall be unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."

41.    Plaintiff was over the age of 40, and a member of a protected class pursuant to the Age Discrimination in Employment Act.

42.    Plaintiff was qualified for his position with Genentech during his employment and successfully performed his job duties for more than fifteen years.

43.    Genentech discriminated against Plaintiff based on his age by terminating his employment.

44.    As a proximate result of willful, knowing, and intentional discrimination against Plaintiff, he has sustained economic losses, humiliation, emotional distress, and mental and physical pain and anguish in an amount subject to proof.

45.    Due to Genentech's discrimination, Plaintiff has incurred and continues to incur legal expenses and attorney's fees, in a sum according to proof.

## FOURTH CAUSE OF ACTION

**(Race Discrimination – Title VII, 42 U.S.C. § 2000e-2)**

46.    Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as though fully set forth herein.

47.    42 U.S.C. § 2000e-2(a)(1) states "it shall be an unlawful employment practice for an employer … fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race [and] sex …"

48.    Plaintiff is African American and male.

COMPLAINT

49.     Plaintiff was qualified for his positions and higher-level positions with Genentech during his employment and successfully performed his job duties for more than fifteen years.

50.     Defendant discriminated against Plaintiff based on his race and sex by failing to promote Plaintiff.

51.     As a proximate result of Genentech's willful, knowing, and intentional discrimination against Plaintiff, he has sustained economic losses, humiliation, emotional distress, and mental and physical pain and anguish in an amount subject to proof.

52.     Due to Genentech's discrimination, Plaintiff has incurred and continues to incur legal expenses and attorney's fees, in a sum according to proof.

## FIFTH CAUSE OF ACTION

### (Retaliation)

53.     Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as though fully set forth herein.

54.     Genentech terminated Plaintiff's employment effective September 28, 2018.

55.     The motivating reason for Genentech's decision to terminate Plaintiff was the Charge of Discrimination, No. 550-2018-00017 that Plaintiff filed with the Equal Employment Opportunity Commission on or about November 11, 2017.

56.     Plaintiff was harmed by his termination, and his termination was a substantial factor in causing his harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as follows:

1.     For a money judgment in an amount no less than $1,000,000, representing compensatory damages including lost wages, earnings, retirement benefits, and other employee benefits, according to proof;

2.     For a money judgment in an amount no less than $1,000,000 for mental pain and anguish and emotional distress;

3.     For punitive damages;

4.     For attorney's fees;

COMPLAINT

8

5.      For costs of suit;

6.      For pre-judgment and post-judgment interest;

7.      For reinstatement of Plaintiff's employment at Genentech;

8.      For such other and further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial on all claims so triable.

Dated:  July 8, 2021                        LAW OFFICES OF SETH W. WIENER

By: _____
                                                          Seth W. Wiener
                                                          Attorney for Plaintiff
                                                          CLARENCE A. JACKSON

9

COMPLAINT